**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

ANTHONY BENSON,

     Movant,

v.                                                                Case No. 2:22-cv-2096-MSN-tmp
                                                                 Ref. Case No. 2:18-cr-20213

UNITED STATES,

     Respondent.

---

**ORDER DENYING IN PART MOTION TO VACATE, SET ASIDE, OR CORRECT**
**SENTENCE UNDER § 2255 AND ORDERING AN EVIDENTIARY HEARING IN PART,**
**DENYING MOTIONS TO AMEND,**
**DENYING EMERGENCY MOTION, AND**
**DENYING IN PART AS MOOT AND DENYING IN PART WITHOUT PREJUDICE**
**MOTION FOR EVIDENTIARY HEARING**

---

Anthony Benson, proceeding *pro se*, moves the Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  (No. 22-cv-2096, ECF No. 1, "§ 2255 Motion.")  The United States responded in opposition to the § 2255 Motion (*id.*, ECF No. 6), and Benson filed a reply in support (*id.*, ECF No. 11[1]).  On May 23, 2025, Benson filed a Motion for Leave to Amend § 2255 Motion (No. 18-cr-20213, ECF No. 127, "Motion to Amend"), followed by an Amended Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 (*id.*, ECF No. 128, "Amended § 2255 Motion").  The Motion to Amend and Amended § 2255 Motion were filed only in the criminal case, not in this matter.  But August 2025, Benson filed two pleadings in this matter,

---

[1] On May 24, 2022, Benson filed a Motion Requesting Extension of Another 30 Days to File Reply Brief (No. 22-cv-2096, ECF No. 10).  Benson delivered his reply brief to prison authorities on July 7, 2022.  (*Id.*, ECF No. 11 at PageID 61.)  The Court **GRANTS** Benson's motion for an extension and deems his reply brief timely filed.

Supplemental Brief in Support of Amended Motion under 28 U.S.C. § 2255 (No. 22-cv-2096, ECF No. 13, "Supplemental Brief") and *Pro Se* Petitioner's Supplement to his 2255 Petition (*id.*, ECF No. 14, "Supplement"), that appear to be in support of his Motion to Amend and Amended § 2255 Motion. Also in August 2025, Benson filed, in his criminal matter, an Emergency Motion to Vacate Illegal Sentence under Federal Rule of Criminal Procedure 35(a) or the All Writs Act (No. 18-cr-20213, ECF No. 135, "Emergency Motion"), and in this matter, a Motion for Evidentiary Hearing, Appointment of Counsel, Appeal Bond, and Subpoena of Phone Records (No. 22-cv-2096, ECF No. 15, "Motion for Evidentiary Hearing"). Finally, on September 16, 2025, Benson filed, in this matter, a second Motion to Correct Illegal Sentence and Request for Expedited Relief pursuant to 28 U.S.C. § 2255 (No. 22-cv-2096, ECF No. 17, "Second § 2255 Motion"). The Government has not responded to the Motion to Amend or Emergency Motion (filed in the criminal matter) or to the Supplemental Brief, Supplement, Motion for Hearing, or Second § 2255 Motion (filed in this matter).

For the reasons set forth below, Benson's Second § 2255 Motion is construed as a motion to amend. Benson's Motion to Amend and the Second § 2255 Motion, construed as a motion to amend, are **DENIED**. The Court will hold an evidentiary hearing on the limited question of whether Benson's trial counsel failed to file a notice of appeal after he asked her to do so. All other grounds for relief in Benson's § 2255 are **DENIED**. Benson's Emergency Motion is **DENIED**, and his Motion for Evidentiary Hearing is **DENIED AS MOOT IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.

## BACKGROUND

Drug Enforcement Administration ("DEA") agents suspected Benson was distributing drugs from a home at 250 Wilder Road in Somerville, Tennessee, so they began investigating.

(No. 18-20213, ECF No. 115 at PageID 310–11.)  On February 2, 2017, a confidential source ("CS") called Benson and asked if Benson "still had some of that powder."  (*Id.* at PageID 311.)  Benson acknowledged that he did and told the CS to call him when the CS ready.  (*Id.*)  On February 8, 2017, a recorded phone call was made from the CS to Benson, in which the CS told Benson that the CS wanted to purchase cocaine.  (*Id.*)  Benson told the CS to let him know and that "he would be in the area."  (*Id.*)  The next day, February 9, 2017, DEA agents met with the CS, who made another recorded phone call to Benson.  (*Id.*)  During that phone call, the CS told Benson that the CS wanted to purchase a quarter ounce of cocaine, and Benson told the CS that he was at his mother's house at 250 Wilder Road in Somerville, Tennessee.  (*Id.*)  After that phone call ended, DEA agents searched the CS for contraband, weapons, and drugs and, finding none, they wired the CS with a transmitter and gave the CS $500 in confidential funds from the Tennessee Bureau of Investigation ("TBI").  (*Id.*)  DEA agents surveilled the CS as they followed the CS to 250 Wilder Road and then watched the CS enter the home.  (*Id.* at PageID 311–12.)  Inside the home, the CS gave Benson the money, and Benson gave the CS a white substance that appeared to be cocaine.  (*Id.* at PageID 312.)  The CS left the home and went to a predetermined location to meet DEA agents.  (*Id.*)  The DEA agents took possession of the white substance that Benson gave to the CS, and it was sent to a DEA laboratory.  (*Id.*)  The substance tested positive for cocaine and had an approximate weight of 4.75 grams.  (*Id.*)

A couple months later, on May 25, 2017, a CS bought cocaine from Benson's brother at the home at 250 Wilder Road in Somerville, Tennessee.  (No. 22-2096, ECF No. 6 at PageID 29.)

Federal agents searched the home at 250 Wilder Road pursuant to a warrant on June 1, 2017.  (*Id.* at PageID 29–30.)  Agents found cocaine and a digital scale.  (*Id.*)  During an earlier search of Benson's residence on March 16, 2017, police found a loaded firearm, ammunition, over

$17,000 in cash, and stolen property.  (*Id.*)

On July 10, 2028, Benson was indicted on two counts of possession with intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), one count of maintaining a residence for the purpose of distributing and using cocaine, in violation of 21 U.S.C. § 856(a)(1), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (No. 18-cr-20213, ECF No. 1 (sealed); ECF No. 2 (penalty copy).)  On June 27, 2019, a First Superseding Indictment was returned, which added two additional counts against Benson for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  (*Id.*, ECF No. 48 (sealed); ECF No. 49 (penalty copy).)

Pursuant to a written plea agreement, Benson pled guilty to Count 2 of the First Superseding Indictment on August 31, 2020.  (*See id.*, ECF Nos. 88, 89, & 90.)  In the plea agreement, the United States agreed to move to dismiss the other five counts in the First Superseding Indictment at sentencing, to recommend that Benson receive full credit for acceptance of responsibility, and to recommend that Benson be sentenced at the low end of the advisory guideline range, as determined by the Court.  (*Id.*, ECF No. 89 at PageID 139.)  In exchange, Benson waived his right to appeal his sentence, provided the sentence was within the applicable guideline range or lower, as determined by the Court, and he waived his right to collaterally attack his sentence, including by filing a motion under § 2255, except for claims of prosecutorial misconduct and ineffective assistance of counsel.  (*Id.* at PageID 140.)

Prior to Benson's sentencing, a presentence investigation report ("PSR") was prepared. (*Id.*, ECF Nos. 96, 101.)  As set forth in the PSR, before the dates alleged in the First Superseding Indictment, Benson had one prior conviction for a controlled substance offense—possession with intent to deliver/sell cocaine—and one prior conviction for a "crime of violence"—facilitation of

aggravated robbery. (*Id.*, ECF No. 116 at PageID 360–61.) At sentencing, the Court sentenced Benson as a career offender under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1 and § 4B1.2 based on those two prior convictions. (*Id.* at PageID 356; *id.*, ECF No. 96 at PageID 183, 188.) As a result, Benson's offense level was a 29 and his criminal history category was Category VI, which made his guideline range of imprisonment 151 to 188 months. (*Id.*, ECF No. 116 at PageID 356; *id.*, ECF No. 96 at PageID 183, 188.) On May 6, 2021, the Court sentenced Benson to 151 months of incarceration, the low-end of the guideline, followed by three years of supervised release. (*Id.*, ECF No 108.) Benson did not appeal.

Benson signed and mailed the § 2255 Motion now before the Court on February 14, 2022, and it was received and docketed by the Clerk's office on February 17, 2022. (No. 22-cv-2096, ECF No. 1 at PageID 1, 13.) Benson's § 2255 Motion asserted eight grounds for relief summarized below:

Ground One: "Ineffective Assistance of Counsel for failing to file a timely notice . . . for Direct Appeal as Requested After Sentencing Hearing."

Ground Two: Ineffective assistance of counsel for failing to file a motion to suppress as requested. Benson alleges that the CS bought cocaine from his brother, not him, and that there were other issues with the CS's purchase of cocaine.

Ground Three: Consideration of purchases by the CS in 2010 and 2011 as relevant conduct was erroneous because Benson was incarcerated during that time, and Title 18 U.S.C. § 3661 is unconstitutional and violates the Fifth and Sixth Amendments and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Ground Four: The CS provided incorrect information regarding the car that Benson drove.

Ground Five: "Agents" provided false and inaccurate information to the grand jury about the amount of cocaine the CS purchased and who was in the home "when it was raided."

Ground Six: Benson was not provided certain recordings in discovery and agents removed security cameras from the house.

Ground Seven: Ineffective assistance because counsel did not subpoena the CS, and the CS provided false information to the grand jury.

Ground Eight:  The affidavit of Sam Grandberry contained false information.

(No. 22-cv-2096, ECF No. 1-1 at PageID 14–17.)

In his Motion to Amend, Benson seeks to add the following two additional grounds for relief:

Ground Nine:  Ineffective assistance of counsel for failing to object to the career offender designation because the facilitation of aggravated robbery conviction was not a qualifying offense under USSG § 4B.1.1 due to Benson serving only a probationary sentence.

Ground Ten:  The Court failed to comply with 21 U.S.C. § 851(b) at sentencing because it did not advise Benson of his prior convictions and provide him an opportunity to affirm or deny them.

(No. 18-cr-20213, ECF No. 127 at PageID 550.)

In his Supplemental Brief, Benson appears to assert one additional ground not included elsewhere:

Ground Eleven:  Retroactive application of the First Step Act and U.S.S.G. Amendment 821 to Benson's sentence.

(No. 22-cv-2096, ECF No. 13 at PageID 82.)

Finally, Benson's Second § 2255 Motion asserts the following four grounds for relief:

Ground One:  Benson's sentence under U.S.S.G. § 4B1.1 is unlawful because facilitation of aggravated robbery is not a "crime of violence," and Benson served only a probationary sentence for that offense.

Ground Two:  Benson was sentenced under a staturoy maximum of 20 years, but the correct maximum penalty is only 15 years.

Ground Three: Benson's sentence exceeds the statutory maximum and is unlawful.

Ground Four: Benson has already served time in excess of the authorized term and his continued imprisonment constitutes an ongoing violation of the Due Process Clause and Eighth Amendment.

(*Id.*, ECF No. 17.)

6

## MOTIONS TO AMEND

As an initial matter, because Benson's Second § 2255 Motion was filed while his original § 2255 Motion was still pending, the Second § 2255 Motion is construed as a motion to amend. *See Clark v. United States*, 764 F.3d 653, 659 (6th Cir. 2014) (discussing *Ching v. United States*, 298 F.3d 174, 175 (2d Cir. 2002)).

A motion for leave to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15. *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014) (citations omitted). In relevant part, Rule 15 provides that the court should "freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

Generally, however, a § 2255 motion may be amended to add new claims only if the movant seeks to add them before the statute of limitations has run. 28 U.S.C. § 2255(f); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). The statute of limitations for a § 2255 motion is one year. *See* 28 U.S.C. § 2255(f). That one-year period runs from the latest of the following four dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

The first of these, that the limitations period begins running when the judgment becomes final, is the default rule. *Simmons v. United States*, 974 F.3d 791, 798 (6th Cir. 2020). If a

7

defendant does not appeal, the judgment becomes final 14 days after it was entered, *i.e.*, after the time in which the defendant must appeal expires. *Blain v. United States*, 766 F. App'x 327, 329 (6th Cir. 2019) (citing *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004)); *see Gillis v. United States*, 729 F.3d 641, 644 (6th Cir. 2013).

If a motion to amend is not made within the one-year statute of limitations, the proposed new claims are time-barred unless they "relate back" to the timely-filed original § 2255 motion. *Hill v. Mitchell*, 842 F.3d 910, 922 (6th Cir. 2016). A proposed claim "relates back to the date of the original pleading" if the claim "arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The Supreme Court has narrowly interpreted the phrase 'conduct, transaction, or occurrence' in this habeas context." *Watkins v. Stephenson*, 57 F.4th 576, 581 (6th Cir. 2023) (citations omitted). An amended claim does not relate back merely because it challenges the same conviction or sentence. *Mayle v. Felix*, 545 U.S. 644, 656–57 (2005). "To relate back, the amended claims must share a common core of operative facts with the original claims," and "any new facts generally may differ only in specificity (not in kind) from those originally alleged." *Watkins,* 57 F.4th at 581 (citation modified). In other words, amended claims do not relate back if they assert new grounds for relief that are "supported by facts that differ in both time and type from those the original pleading set forth." *Howard*, 533 F.3d at 476 (citing *Mayle*, 545 U.S. at 650).

Benson did not appeal, so the limitations period began running when the judgment of conviction became final, which was 14 days after it was entered. Fed. R. App. P. 4(b)(1)(A)(i); s*ee Johnson v. United States*, 457 F. App'x 462, 464-65 (6th Cir. 2012). The judgment was entered on May 17, 2021, and 14 days after that was May 31, 2021. (No. 18-cr-20213, ECF Nos. 107, 108.) But because May 31, 2021, was a legal holiday, Benson's time to appeal was extended until

Tuesday, June 1, 2021. *See* Fed. R. App. P. 26(a)(1)(c). Benson's conviction became final on that date. And the statute of limitations expired one year later on June 1, 2022.

Benson's Motion to Amend was filed on May 23, 2025—nearly three years after the statute of limitations expired. Benson's Second § 2255 Motion, construed as a motion to amend, was filed even later—on September 16, 2025. And none of Benson's amended claims in either motion relate back to his original § 2255 Motion. Instead, they are entirely new claims because they "do not rely on the same common core of operative facts." *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017). That means all the additional claims in Benson's Motion to Amend, Supplemental Brief, and the Second § 2255 Motion, construed as a motion to amend, are time barred. For that reason, Benson's Motion to Amend (No. 18-cr-20213, ECF No. 127) and Second § 2255 Motion, construed as a motion to amend (No. 22-cv-2096, ECF No. 17), are **DENIED**. The Court will consider only the eight grounds asserted in the original § 2255 Motion.

## THE § 2255 MOTION

Under 28 U.S.C. § 2255, a federal prisoner may move the court that sentenced him to vacate, set aside, or correct the sentence. The movant may attack his sentence on the grounds that (1) it was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "To obtain relief under § 2255, the petitioner must demonstrate the existence of 'an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Whyte v. United States*, No. 19-5682, 2020 WL 3470322, at *2 (6th Cir. Feb. 5, 2020) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). The movant bears the burden of proving that he is entitled to relief by a preponderance of the evidence.

9

*Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).  Vague and conclusory claims that are not supported by specific factual allegations with some probability of truth are not enough to warrant relief.  *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

The movant has a "relatively light" burden to show that he is entitled to an evidentiary hearing.  *Miller v. United States*, 561 F. App'x 485, 494 (6th Cir. 2014) (citation omitted).  That does not mean "a full blown evidentiary hearing is . . . required in every instance."  *Christopher v. United States*, 605 F. App'x 533, 537 (6th Cir. 2015) (citation modified).  But the movant is generally "due some form of hearing suited to the circumstances."  *Christopher*, 605 F. App'x at 537 (citation modified); *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (explaining that when there is a factual dispute, "an evidentiary hearing is required to determine the truth of the petitioner's claims" (citing *Smith v. United States*, 348 F.3d 545, 550–51 (6th Cir. 2003))).

However, an evidentiary hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008) (finding that evidentiary hearing not required because facts alleged would not have entitled movant to relief even if true); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *Gabrion v. United States*, 43 F.4th 569, 589 (6th Cir. 2022) (explaining that evidentiary hearing is not required if the claims "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact" (citation modified)).  Finally, when the judge considering the § 2255 motion

also presided over pretrial proceedings or sentencing, the judge may rely on his recollections of those proceedings. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citation omitted).

A.     <u>Grounds One, Two and Seven: Ineffective Assistance of Counsel</u>

A movant's claim that he received ineffective assistance of counsel is controlled by the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). That test requires the movant to show that (1) counsel's performance "fell below an objective standard of reasonableness," and (2) counsel's "deficient performance prejudiced the defense." *Id.* at 687. The court may address *Strickland*'s two prongs in any order, and if the movant fails to satisfy one, the court need not address the other. *See id.*; *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020).

To satisfy *Strickland*'s first prong, the movant must show that counsel made errors "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citation modified). The court's review of "counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. The court "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (citation modified).

To satisfy *Strickland*'s second prong, the movant show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* That standard is not met by showing only that counsel's errors "had some conceivable effect on the outcome of the proceeding" because "virtually every act or omission would meet that test." *Id*. at 693 (citation modified).

11

Ultimately, *Strickland*'s test is a "high bar," and satisfying it "is never an easy task." *Wingate*, 969 F.3d at 255.

1.  Ground One: Failure to File Direct Appeal

''Failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (citing *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)).  The violation occurs even though the defendant waived all or most of his rights to appeal in a plea agreement, because even in such circumstances, "a defendant is entitled to counsel who will follow through on express instructions to proceed with an appeal, no matter what the ultimate odds of success." *Id.* at 360.

To prevail on this claim, the movant must show by a preponderance of the evidence "that counsel either disregarded his specific instructions to file a notice of appeal or failed to consult him about an appeal." *Christian v. United States*, No. 2:21-cv-02466-SHL-atc, 2024 WL 3939608, at *3 (W.D. Tenn. Aug. 26, 2024) (citing *Nix v. United States*, No. 20-6218, 2022 WL 815539, at *2 (6th Cir. Mar. 15, 2022)).  If there is a factual dispute, an evidentiary hearing is required to determine the truth of the movant's claims.  *Campbell*, 686 F.3d at 360.

In Ground One, Benson asserts that "right after" he was sentenced on May 6, 2021, he told his attorney that he wanted her to file a notice of appeal so that he could appeal his sentence.  (No. 22-cv-2096, ECF No. 1-1 at PageID 15.)  Benson also says that he called and texted his attorney and left messages with her secretary to request that she file a notice of appeal.  (*Id.* at PageID 15, 18.)  Benson submitted a declaration signed under penalty of perjury in support of these allegations.  (*Id.* at PageID 18–19.)  Defense counsel has submitted an affidavit in response, but it does not squarely address whether Benson specifically instructed her to file a notice of appeal; however, she implies that his allegations are false.  According to counsel's affidavit, she has never

12

employed a secretary or paralegal, and Benson did not contact her between the date he was sentenced, May 6, 2021, and the date he was ordered to surrender to the Bureau of Prisons ("BOP"), June 17, 2021. (No. 22-cv-2096, ECF No. 6-1 at PageID 45.) Counsel says that the "only request" she received was for a copy of Benson's file, which was made by Benson's girlfriend on January 24, 2022. (*Id.* at PageID 46.)

Because it is not clear from the record whether Benson instructed his counsel to file an appeal, an evidentiary hearing is required on this issue. In accordance with Rule 8(c) of the § 2255 Rules, because an evidentiary hearing is required, the Court will appoint counsel for Benson if he is a financially eligible pursuant to 18 U.S.C. § 3006A. Benson is **ORDERED** to complete and file an *in forma pauperis* affidavit and a certified copy of his inmate trust fund account statement for the last six months **within 30 days of the date of this Order.** The Clerk is **DIRECTED** to provide Benson with a copy of the prisoner *in forma pauperis* affidavit along with this Order. Once the Court confirms that Benson is financially eligible, counsel will be appointed and an evidentiary hearing will be set by separate notice.

2.      Grounds Two and Seven: Failure to File Motion to Suppress

In Grounds Two and Seven, Benson argues that his attorney was ineffective for failing to file motions to suppress that he requested she file. (No. 22-cv-2096, ECF No. 1-1 at PageID 16.) Benson says that the CS purchased cocaine from his brother, not him, so the CS lied to officers when the CS told them that they purchased the drugs from Benson. (*Id.*) Benson also alleges that the CS provided "false and inaccurate testimony" to the grand jury and his counsel refused to subpoena the CS. (*Id.* at PageID 17.)

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to

13

the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001) (citing *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973)). Unless claims of ineffective assistance of counsel "attack the voluntary or intelligent nature of [a] plea by showing that counsel's advice was inadequate," those claims are waived by the subsequent guilty plea. *Id.* at 308–09; *see United States v. Bogle*, No. 21-3746, 2023 WL 110722, at *2 (6th Cir. Jan. 5, 2023) (explaining that "by pleading guilty, [the defendant] forfeited his Fourth Amendment grounds to appeal the admissibility of the evidence"); *Hawkins v. United States*, No. 22-5265, 2022 WL 4682518, at *4 (6th Cir. Sept. 8, 2022) (same); *Criswell v. United States*, No. 21-4236, 2022 WL 2346303, at *2 (6th Cir. June 23, 2022) (same).

Benson's claim that counsel was ineffective for failing to file a motion to suppress based on issues about the credibility of the CS, or the CS's statements or actions, does not attack the voluntary or intelligent nature of his guilty plea. Instead, it relates to "earlier alleged constitutional deprivations." *See Stiger*, 20 F. App'x at 309. And so, too, his claim about counsel's refusal to subpoena the CS in Ground Seven. Thus, his claims are foreclosed by his guilty plea. *See id.*; *see also Tollett*, 411 U.S. at 267; *Hawkins*, 2022 WL 4682518, at *4.

Benson's claims for ineffective assistance of counsel in Grounds Two and Seven are **DENIED**.

## B.    Ground Three: Drug Purchases from 2010 and 2011 and 18 U.S.C. § 3661

In Ground Three, Benson asserts that two prior alleged drug purchases made by the CS in 2010 and 2011 were considered as "Relevant Conduct" at sentencing. Benson says that he was in state prison from 2009 to 2011, so these purchases never happened. Benson also broadly asserts that "18 U.S.C. § 3661 is unconstitution[al] and in violation of the Fifth and Sixth Amendments as well as in violation of *Apprendi v. New Jersey*." (No. 22-cv-2096, ECF No. 1-1 at PageID 16.)

14

"A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017); *see also United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) (similar); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (holding that "it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones" (citation modified)). Ground Three is only three sentences. Benson has failed to develop this argument and has therefore waived it.

In addition, the argument is barred by the waiver in Benson's plea agreement. Benson waived his right to collaterally attack his sentence, including by filing a motion under § 2255, except for claims of prosecutorial misconduct and ineffective assistance of counsel. "A defendant may waive any right, even a constitutional one, in a plea agreement, if he relinquishes that right knowingly and voluntarily." *Portis v. United States*, 33 F.4th 331, 334 (6th Cir. 2022). Ground Three does not assert prosecutorial misconduct or ineffective assistance of counsel, nor does Benson attack the knowingness or voluntariness of his plea agreement and the waiver in it.

Finally, the argument is without merit regardless. As best the Court can tell, Benson is arguing the Court improperly considered other conduct for the purposes of applying a two-point sentencing enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, and that the Court considering such conduct violates the Fifth and Sixth Amendment. But neither the enhancement, nor the alleged drug purchases, ultimately affected Benson's guideline range for sentencing because Benson was found to be a career offender under U.S.S.G. § 4B1.1 and § 4B1.2. (*See* No. 18-cr-20213, ECF No. 101 at PageID 220; *id.*, ECF No. 116 at PageID 375–77.)

15

For the above reasons, Ground Three is **DENIED** because it is waived, barred by the plea agreement, and without merit.

C.    <u>**Grounds Four through Eight**</u>

In Grounds Four through Eight, Benson asserts that the CS, DEA Agents, and the Assistant United States Attorney provided false or inaccurate information.  In Ground Five, Part (I) and Ground Seven, Part (B), Benson says that the false and inaccurate information was presented to the grand jury.  For the remaining claims, Benson does not explain the context or significance of the false and inaccurate information.  For the reasons set forth below, Benson is not entitled to relief on any of his claims in Grounds Four through Eight.

First, Ground Four is asserted in a perfunctory manner such that it does not state a viable claim to relief under § 2255.  *Thomas*, 849 F.3d at 679.  Nor does Ground Four allege "an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea."  *See Whyte*, 2020 WL 3470322, at *2.

Turning to Ground Five, Part (I), Benson admitted during his change of plea hearing that the amount of cocaine purchased by the CS on February 9, 2017, was 4.75 grams. (No. 18-20213, ECF No. 115 at PageID 310–12; *see id.*, ECF No. 96 at PageID 180.)  Benson is "bound to the answers he provided during the plea colloquy."  *Whittingham v. United States*, No. 24-1621, 2025 WL 243963, at *2 (6th Cir. Jan. 2, 2025) (citation modified) (quoting *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999)).  Benson presents no evidence that agents provided false information to the grand jury about the amount of cocaine the CS purchased.

Ground Five, Part (II) appears to challenge information included in the PSR about who was present when "this house . . . was raided."  (No. 22-cv-2096, ECF No. 1-1 at PageID 16.)  Benson

16

has not come forward with proof to support the veracity of his claim, nor does he assert that this alleged inaccuracy had an injurious effect on his sentence.

In Ground Six, Benson asserts that "the surveillance and recording" made by DEA agents was never provided to him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500(a), and *Giglio v. United States*, 405 U.S. 150 (1972). (No. 22-cv-2096, ECF No. 1-1 at PageID 16.)

"To prevail on a *Brady* claim, a defendant must demonstrate that 1) the evidence at issue was favorable to him, 2) the prosecution suppressed that evidence, and 3) the suppression prejudiced him." *Stegawski v. United States*, No. 20-3067, 2020 WL 9255225, at *3 (6th Cir. Apr. 22, 2020) (citing *Abdur'Rahman v. Colson*, 649 F.3d 468, 473 (6th Cir. 2011)). But if the "defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information," then there is no *Brady* violation. *Id.* (citing *Abdur'Rahman*, 649 F.3d at 474).

Under the Jencks Act, after a witness has testified on direct examination, the government or the defendant may discover the witness's pretrial statements if the statements are in the possession of the party calling the witness and relate to the subject matter of the witness's testimony. *See* 18 U.S.C. § 3500(a).

*Giglio* involves "a specific type of *Brady* violation: one where the prosecutor failed to correct false testimony that he knew, or should have known, to be false." *Whitson v. United States*, No. 22-5592, 2022 WL 18232150, at *4 (6th Cir. Dec. 13, 2022) (citing *Rosencrantz v. Lafler*, 568 F.3d 577, 583 (6th Cir. 2009)). To succeed on a *Giglio* claim, the movant must show that "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was

17

false. Additionally, there must be a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (quoting *Rosencrantz*, 568 F.3d at 584)

Benson does not assert that the missing or destroyed surveillance and recordings are favorable to him. He also has not supported his claim with evidence. Instead, he has provided only his conclusory assertions that agents provided false information or that the prosecution suppressed evidence or failed to correct false testimony that it knew was false. Finally, Benson does not explain how the Jencks Act was violated when there was no trial.

Next, Grounds Five and Seven assert, in part, that prosecutors presented false or inaccurate information to the grand jury. (No. 22-cv-2096, ECF No. 1-1 at PageID 16–17.) Again, however, Benson offers no evidence to support his conclusory allegations that any information presented to the grand jury was false or that prosecutors knew it was false.

Finally, part of the claims in Grounds Four through Eight allege constitutional violations that occurred prior to Benson's guilty plea. Because Benson "solemnly admitted in open court" that he was in fact guilty of Count 2 in the First Superseding Indictment, he is barred from raising these independent claims relating to the alleged deprivation of constitutional rights that occurred prior to the entry of his guilty plea. *See Tollett*, 411 U.S. at 267; *see also Class v. United States*, 138 S.Ct. 798, 805 (2018) ("A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered.").

For the reasons set forth above, Benson's claims in Grounds Four through Eight are waived, contradicted by the record, barred by his guilty plea, or have no evidentiary support. Accordingly, Grounds Four through Eight are **DENIED**.

## EMERGENCY MOTION

In his Emergency Motion, Benson seeks relief pursuant to Federal Rule of Criminal Procedure 35(a) or the All Writs Act. (No. 18-cr-20213, ECF No. 135 at PageID 586.) In the Emergency Motion, Benson asserts that (1) his sentence exceeds the statutory maximum, and (2) his conviction for facilitation of aggravated robbery should not have been considered for the career offender enhancement because he served only a probationary sentence. (*Id.*)

First, neither Federal Rule of Criminal Procedure 35(a) nor the All Writs Act allows Benson to challenge his sentence under the circumstances here.

Rule 35(a) allows the court to "correct a sentence that resulted from arithmetical, technical, or other clear error," but only "within 14 days after sentencing." Fed. R. Crim. P. 35(a). The 14-day period in Rule 35(a) is jurisdictional. *United States v. Hall*, 661 F.3d 320, 322 (6th Cir. 2011). Benson's Emergency Motion was filed years after his sentencing, so Rule 35(a) does not provide a path to relief.

The All Writs Act is also a dead end. Although he does not refer to it as such, it appears Benson seeks a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a). "The writ of error coram nobis may be used to vacate a federal sentence or conviction when a § 2255 motion is unavailable, such as when the petitioner no longer meets the 'in custody' requirement of § 2255 after serving a sentence." *Barrow v. United States*, 455 F. App'x 631, 634 (6th Cir. 2012) (citation omitted). However, "a prisoner in custody is barred from seeking a writ of error coram nobis." *United States v. McClellan*, 30 F. App'x 340, 342 (6th Cir. 2002) (citation modified). Benson remains in custody and has not shown that a § 2255 motion is unavailable to him, so he cannot seek a writ of error coram nobis under the All Writs Act.

Second, Benson's arguments are without merit.  The statutory maximum for a violation of
21 U.S.C. § 841(a)(1) is generally 20 years.[2]  *See* 21 U.S.C. § 841(b)(1)(C).  The Court discussed
the statutory maximum with Benson at the change of plea hearing.  (No. 18-cr-20213, ECF 115 at
PageID 307–09.)  Benson argues that the statutory maximum is 15 years.  (No. 18-cr-20213, ECF
No. 135 at PageID 587.)  But even if Benson were correct, his sentence of 151 months (or 12 years
and 7 months) incarceration, is <u>*less*</u> than the statutory maximum.

Benson's other argument, about his conviction for facilitation of aggravated robbery, is
contradicted by the record.  According to the PSR, he was sentenced to three years <u>*in custody*</u> for
that offense.  (No. 18-cr-20213, ECF No. 96 at PageID 95–96.)  Benson served approximately one
year and eight months of that sentence <u>*in custody*</u> before being released on parole.  (*See id.*).  At
the sentencing hearing, Benson's counsel did not object to this information as set forth in the PSR,
nor did she argue that it was incorrect.  And Benson's assertion that this conviction is not a "crime
of violence" is barred by the waiver in his plea agreement.  *See United States v. Fleming*, 463 F.
App'x 550, 552 (6th Cir. 2012).

For the reasons set forth above, Benson's Emergency Motion to Vacate Illegal Sentence
under Federal Rule of Criminal Procedure 35(a) or the All Writs Act (No. 18-cr-20213, ECF No.
135) is **DENIED**.

## <u>MOTION FOR EVIDENTIARY HEARING</u>

Finally, in his Motion for Evidentiary Hearing, Benson seeks the following:

(1)    an evidentiary hearing pursuant to 28 U.S.C. § 2255(b);

(2)    appointment of counsel under 18 U.S.C. § 3006A to assist with the evidentiary
hearing;

---

[2] But if a person has a prior conviction for a "felony drug offense," then the statutory
maximum is 30 years, and if death or serious bodily injury results from the use of the schedule I
or II controlled substance, then the statutory maximum is life.  *See* 21 U.S.C. § 841(b)(1)(C).

(3)  entry of an appeal bond to secure costs on appeal under Federal Rule of Appellate Procedure 7; and

(4)  issuance of a subpoena for phone and text message records relevant to Benson's ineffective assistance of counsel claims.

(No. 22-cv-2096, ECF No. 15.)

As discussed above for Ground One, the Court will set an evidentiary hearing on the limited issue of whether trial counsel failed to file a notice of appeal after Benson requested her to do so, and pursuant to Rule 8(c) of the § 2255 Rules, the Court will also appoint Benson counsel for that purpose once the Court determines that Benson is financially eligible.  Because of that, Benson's requests for an evidentiary hearing and appointment of counsel in his Motion for Evidentiary Hearing are **DENIED AS MOOT**.

Next, a final judgment has not been entered in this matter, so there is no appeal for which a bond could be used to secure costs pursuant to Federal Rule of Appellate Procedure 7.  And finally, Benson's request for a subpoena does not contain information about to whom the subpoena would be directed or the specific records sought.  Once counsel is appointed, counsel can determine whether a subpoena is needed.  For these reasons, Benson's request of an appeal bond and a subpoena are **DENIED WITHOUT PREJUDICE**.

## **CONCLUSION**

As set forth above, Benson's Motion to Amend (No. 18-cr-20213, ECF No. 127) and Second § 2255 Motion, construed as a motion to amend (No. 22-cv-2096, ECF No. 17), are **DENIED**.  Benson's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 1) is **DENIED** for Grounds Two through Eight, and an evidentiary hearing is **ORDERED** for Ground One only.

Benson is **ORDERED** to complete and file an *in forma pauperis* affidavit and a certified copy of his inmate trust fund account statement for the last six months **within 30 days of the date**

**of this Order.**  Once the Court confirms that Benson is financially eligible, counsel will be appointed, and an evidentiary hearing will be set by separate notice.  As provided in Rule 7 of the § 2255 Rules, the parties will also have an opportunity to supplement the record with additional proof and other materials regarding Ground One only.

The Clerk is **DIRECTED** to provide Benson with a copy of the prisoner *in forma pauperis* affidavit along with this Order.

It is further **ORDERED** that the United States Marshal, or his authorized deputy, transport Benson from his place of incarceration to the Western District of Tennessee, allowing sufficient time for Benson to be available in this judicial district to meet with his appointed attorney before the evidentiary hearing.

**IT IS SO ORDERED**, this 1st day of October, 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE